7 Arts Pictures v. 9MD UK Limited First, we have Mr. Hoffman by telephone, I believe. Yes, Your Honor. I am available here and with my apologies for not being present. All right. I'm just curious. Why are you not here? There was a bollocks up in my office. I am scheduled for an oral argument in the Fifth Circuit, and I came here for that. And my office had not reminded me of the date of this. And so I had an absolute conflict, and then the clerk was kind enough to arrange this so that I can do this and then run over to the Fifth Circuit. All right. I guess the Fifth Circuit is more important than us. It was just I forgot, ma'am. Definitely not. I would have done it the other way around. And it's your honor. And if you wish to proceed with the argument, please proceed. Yes, this is a case of the default judgment. The district court refused to grant the default judgment requested by 7 Arts, and it refused to both grant the declaratory relief regarding the Copyright Act claim and the claim for money damages. And it did that both because it felt it had discretion to decline declaratory relief and because it wanted to give comedy to a liquidation proceeding of the defendant, 9MD Limited, that was then pending and still is pending in England. This is Judge Hawkins. What's the basis for our jurisdiction? The United States Copyright Act is the basis for the jurisdiction of subject matter, personal jurisdiction through the long arm because 9MD actually reached out and engaged in activities here by seeking to interfere with the distribution of the film by 7 Arts Pictures. Have they registered or attempted to register the U.K. judgment in the United States? The answer is no, isn't it? Yes, that's correct. They have not. If and when they do it, you'll have a full battery of counterclaims, et cetera, wouldn't you? No. The way this has worked is that the judgment is not against 7 Arts. It is against a predecessor in title that purports to own the copyright to one underlying rewrite of the motion picture, not the motion picture copyright and not even the original screenplay on which the film is based. And the judgment was against a company called Gone to Hell Limited, which was a production company used in England and asserted only claims with respect to the United Kingdom copyright, which at that time under the then applicable English law was the only claim that the English courts would have jurisdiction over. What is your relationship to GTH? There's no formal relationship other than my daughter owns it and she's also an officer of 7 Arts. And we often set up special purpose companies like this in order to do a picture. Now, the significance of this is that the liquidator of the – 9MD is a company in liquidation. The liquidator was originally named and we agreed to settle with the liquidator because the liquidator does not want to dispute this claim. Because, in fact, the claim of the other party, who's another creditor of 9MD, that was also a default judgment entered in South Africa. And the liquidator does not want to get involved in the decisions about whether or not the claim of the South African claimant is valid or whether our claim is valid. He wants us to both pursue and get our remedies and then he will make what he believes is his responsibility just to make a distribution decision with respect to how the assets of the estate are distributed in connection with what are, in effect, two default claims. You just used the phrase, we agreed. What do you mean? That means that 7 Arts Pictures and the liquidator, this Mr. Singla, entered into a settlement agreement which was filed with the court below. And that settlement agreement dismissed the claims against him. So, at least in part, you participated in the UK proceedings? No, Your Honor. Well, what are you describing got filed in court? That was, we sued Mr. Singla in this action. This was then Mr. Singla dealing with us as a potential defendant in this action. And so we then settled with Mr. Singla in this action. The English court does not have, in our opinion, any jurisdiction over the claims in question here which arise under the United States Copyright Act. And so, in that circumstance, only this court could determine whether or not our claims under the Copyright Act are valid. And particularly when one of this other creditor of 9MD was sending letters to all the third-party distributors around the world claiming that because of their ownership of this one rewrite version of the screenplay, they could stop distribution of the picture everywhere, which was the reason why we filed this action. Wouldn't that be a derivative work, a rewrite of the screenplay? No, it would not, Your Honor. A derivative work would only be if it was a, well, I strike that the movie is a derivative work of the screenplay. That is correct. And the other screenplay, because we own the original screenplay, the rewrite is not a derivative work of the underlying screenplay. And, indeed, one of the issues is we claim there's nothing original in the rewrite that would give any copyright protection even if they do own the rewrite. Also, isn't there a treaty between the United States and UK respecting the copyright? Yes, but that wouldn't affect this, Your Honor. That just would mean that if a work is copyrighted in the U.S., it will get the same protection in England that an English copyright would get. This is under the Berne Convention and also the University, but it doesn't affect this issue. And vice versa. Correct. So if the claims are adjudicated in the UK, the U.S. courts would have to respect that. No, Your Honor, because the UK court would not have jurisdiction to adjudicate the claim here, which is a claim for United States copyright infringement. The only thing the UK court could do is adjudicate a claim of United Kingdom copyright. And we indicated that we were prepared in the default judgment to make sure we exclude any issue, even though, obviously, Mr. Stengler doesn't care about this in real life. We're ready to exclude any issue that might arise under a UK copyright infringement action arising as a result of this claimed ownership of the rewrite. Well, in any event, we're reviewing Judge Anderson's order, and he declined to exercise jurisdiction over your declaratory relief claim. What's wrong with his declination there? He can't do that, Your Honor, we believe, if we also have a claim for money damages as well, which we do. And I believe we cited in our brief. Excuse me, counsel. Is that your interference with contract claim? Yes, that's correct. Well, didn't he dismiss that one on comedy grounds? He did. And what was wrong with that? Well, he can't do it on comedy grounds when the other action, we're not a defendant in the other action. We are not, that court doesn't have jurisdiction. And as I was saying, under the Intel case, which is your leading case on this, this is effectively a backdoor abstention that would violate the principles of the Ninth Circuit Intel case, which is the leading case in the area under Colorado River. And under those circumstances, it would be inappropriate unless, as Intel says, the English court could resolve all matters, which it cannot as a matter of law, because it cannot deal with our international copyright claims. It can only deal with the U.K. claims. Excuse me, this is Judge Hawkins. Yes, sir. Until 9MD attempts to register the judgment from the U.K. in the United States, you're free to ignore them, aren't you? Well, but, Your Honor, he can be- Can you start, listen, when I ask a question, I'd like a yes or a no, then you can explain. No, that is incorrect, Your Honor. Okay, tell me why. Because they can then take that and then run around, as they did, and assert by letters, copying this judgment to third-party distributors, saying that those third-party distributors have no right to distribute the picture. So they can interfere with our distribution of the picture, whether or not they register the judgment in the United States, which, in fact, is exactly what happened. Okay, answer this question, if you can, as simply as you can. Yes, sir. What claim do you think that you have that you could not assert in a counterclaim were 9MD to register their judgment here? Well- This is what's called a pregnant silence. Well, I'm struggling with it because their claim would only be a claim with respect to U.K. copyright law. It wouldn't even be a claim with respect to the U.S. copyright law. So there's just two different animals. You know, one is copyright arises under the law of the individual state. There's no international copyright as such. And so they could claim the U.K. copyright in the picture was infringed, which would be an infringement that occurred in the U.K. The infringements that occur in the United States or under United States copyright law allows infringements that also occur outside the United States of a U.S. copyright. Those are a separate cause of action. They're just two separate entities entirely under the law as it now stands. And you couldn't join the claims that you now claim you have when 9MD registered their U.K. judgment? Well, two questions. It's probably under Rule 20 Joinder, if I have the rule correctly, which is broad, that we probably could join the claims. I'm not suggesting otherwise. But that's never going to happen because Mr. Singler, who's the liquidator and in charge of it, has no interest in registering the judgment. We've actually settled the matters over there. So he's not going to be registering anything. He just expects us, if we want to get a distribution out of the estate, we've got to establish that we have a claim. And that is an antecedent question of ownership, and that's another issue on comedy, and particularly comedy with respect to international bankruptcy proceedings. And we cited Coriag in a few of those cases. Because in this circumstance, this court needs to say, wait a second, this U.S. company has these rights to the picture. Then the significance of that in terms of distribution of the assets of the estate of 9MD in England, that is the responsibility of the liquidator, not the determination of whether or not there is an underlying ownership claim that we have. Because the U.K. court, you see, if the court denies our relief, we have no relief anywhere. Because if they use your example, let's say they never register the 9MD judgment in the U.S., which they have no intention of doing and have not done, then what's my remedy? I can't get a remedy in the U.S., I can't get a remedy in the U.K., because in that circumstance I can't sue in the U.K. for these claims. And so I have no remedy whatsoever, whereas the South African, who filed this claim originally, he has a default judgment that he walks into the liquidator and says, here's my default judgment against you, 9MD, for X, give all the money to me. Whereas we have no remedy under the court's decision because then we can't get a judgment anywhere. All right, thank you, counsel. You've exceeded your time. I'm sorry. Okay, was there anything else? Any further questions? No? All right, thank you. The case of Seven Arts Pictures v. 9MD, U.K. Limited, will be submitted.
judges: Goodwin, Hawkins, Wardlaw